**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

**Southern District of Texas**
(State)

Case number *(if known)*: ____________ Chapter 11

☐ Check if this is an amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy

04/25

**If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals*, is available.**

| | | |
|---|---|---|
| **1. Debtor's Name** | **Blackboard Tennessee LLC** | |
| **2. All other names debtor used in the last 8 years**<br><br>Include any assumed names, trade names, and *doing business as* names | **N/A** | |
| **3. Debtor's federal Employer Identification Number** (EIN) | **52-2081178** | |
| **4. Debtor's address** | **Principal place of business**<br><br>**5201 Congress Avenue**<br>Number Street<br><br>**Boca Raton, FL 33487**<br>City State Zip Code<br><br>**Palm Beach County**<br>County | **Mailing address, if different from principal place of business**<br><br>Number Street<br><br>P.O. Box<br><br>City State Zip Code<br><br>**Location of principal assets, if different from principal place of business**<br><br>Number Street<br><br>City State Zip Code |
| **5. Debtor's website** (URL) | **https://www.anthology.com** | |
| **6. Type of debtor** | ☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))<br>☐ Partnership (excluding LLP)<br>☐ Other. Specify: | |

**7. Describe debtor's business**

A. *Check One:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☒ None of the above

B. *Check all that apply:*

☐ Tax-exempt entity (as described in 26 U.S.C. § 501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes .
**54151 - Computer Systems Design and Related Services**

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

*Check One:*

☐ Chapter 7

☐ Chapter 9

☒ Chapter 11. *Check **all** that apply:*

- ☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,424,000 (amount subject to adjustment on 4/01/28 and every 3 years after that).
- ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).
- ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and it chooses to proceed under Subchapter V of Chapter 11.
- ☐ A plan is being filed with this petition.
- ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).
- ☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.
- ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☒ No
☐ Yes.

District ______ When MM/DD/YYYY Case number ______

District ______ When MM/DD/YYYY Case number ______

Debtor **Blackboard Tennessee LLC** Case number *(if known)*
Name

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

☐ No
☒ Yes. Debtor **See Rider 1** Relationship **Affiliate**
District **Southern District of Texas** When **09/29/2025**
MM / DD / YYYY
Case number, if known

**11. Why is the case filed in *this* district?**

*Check all that apply:*

☐ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☒ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☒ No
☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.
What is the hazard?

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other

**Where is the property?**
Number Street

City State Zip Code

**Is the property insured?**

☐ No
☐ Yes. Insurance agency
Contact name
Phone

**Statistical and administrative information**

**13. Debtor's estimation of available funds**

*Check one:*

☒ Funds will be available for distribution to unsecured creditors.
☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

**14. Estimated number of creditors (on a consolidated basis)**

| | | |
|---|---|---|
| ☐ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☒ 5,001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than 100,000 |
| ☐ 200-999 | | |

Debtor **Blackboard Tennessee LLC** Case number *(if known)*
Name

**15. Estimated assets (on a consolidated basis)**

- ☐ $0-$50,000
- ☐ $50,001-$100,000
- ☐ $100,001-$500,000
- ☐ $500,001-$1 million
- ☐ $1,000,001-$10 million
- ☐ $10,000,001-$50 million
- ☐ $50,000,001-$100 million
- ☐ $100,000,001-$500 million
- ☐ $500,000,001-$1 billion
- ☒ $1,000,000,001-$10 billion
- ☐ $10,000,000,001-$50 billion
- ☐ More than $50 billion

**16. Estimated liabilities (on a consolidated basis)**

- ☐ $0-$50,000
- ☐ $50,001-$100,000
- ☐ $100,001-$500,000
- ☐ $500,001-$1 million
- ☐ $1,000,001-$10 million
- ☐ $10,000,001-$50 million
- ☐ $50,000,001-$100 million
- ☐ $100,000,001-$500 million
- ☐ $500,000,001-$1 billion
- ☒ $1,000,000,001-$10 billion
- ☐ $10,000,000,001-$50 billion
- ☐ More than $50 billion

## Request for Relief, Declaration, and Signatures

**WARNING --** Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on **09/29/2025**
MM/ DD / YYYY

✘ ***/s/ Heath C. Gray***
Signature of authorized representative of debtor

**Heath C. Gray**
Printed name

Title **Chief Restructuring Officer**

**18. Signature of attorney**

✘ ***/s/ Charles A. Beckham, Jr.***
Signature of attorney for debtor

Date **09/29/2025**
MM/DD/YYYY

**Charles A. Beckham, Jr.**
Printed name

**HAYNES AND BOONE, LLP**
Firm name

**1221 McKinney Street, Suite 4000**
Number Street

**Houston** **Texas** **77010**
City State ZIP Code

**(713) 547-2000**
Contact phone

**charles.beckham@haynesboone.com**
Email address

**02016600** **Texas**
Bar number State

| **Fill in this information to identify the case:** | |
|---|---|
| United States Bankruptcy Court for the: **Southern District of Texas** (State) | |
| Case number *(if known)*: ____________ | Chapter **11** |

☐ Check if this is an amended filing

**Rider 1**
**Pending Bankruptcy Cases Filed by the Debtor and Affiliates of the Debtor**

On the date hereof, each of the entities listed below (collectively, the "Debtors") filed a petition in the United States Bankruptcy Court for the Southern District of Texas for relief under chapter 11 of title 11 of the United States Code. The Debtors have moved for joint administration of these cases under the case number assigned to the chapter 11 case of Anthology Inc.

- Anthology Inc.
- Academic Management Systems, LLC
- Admissions US, LLC
- Anthology Inc. of Missouri
- Anthology Inc. of NY
- ApplyYourself, Inc.
- Astra Acquisition Corp.
- Astra Intermediate Holding Corp.
- AY Software Services, Inc.
- Bb Acquisition Corp.
- Bb Management LLC
- Blackboard Campuswide of Texas, Inc.
- Blackboard Collaborate Inc.
- Blackboard Holdings, LLC
- Blackboard International LLC
- Blackboard LLC
- Blackboard Student Services Inc.
- Blackboard Super Holdco, LLC
- Blackboard Tennessee LLC
- Campus Management Acquisition Corp.
- Edcentric Holdings, LLC
- Edcentric Midco, Inc.
- Edcentric, Inc.
- Higher One Real Estate SP, LLC
- MyEdu Corporation
- Orgsync, Inc.
- Perceptis, LLC

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BLACKBOARD TENNESSEE LLC, | ) | Case No. 25-___________(___) |
| | ) | |
| Debtor. | ) | |

**LIST OF EQUITY SECURITY HOLDERS**[1]

| Equity Holder | Address of Equity Holder | Percentage of Equity Held |
|---|---|---|
| Blackboard LLC | 5201 Congress Avenue, Boca Raton, FL 33487 | 100% |

[1] This list serves as the disclosure required to be made by the debtor pursuant to Rule 1007 of the Federal Rules of Bankruptcy Procedure. All equity positions listed indicate the record holder of such equity as of the date of commencement of the chapter 11 case.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| BLACKBOARD TENNESSEE LLC, | ) | Case No. 25-___________(___) |
| Debtor. | ) | |

**CORPORATE OWNERSHIP STATEMENT**

Pursuant to Rules 1007(a)(1) and 7007.1 of the Federal Rules of Bankruptcy Procedure, the following are corporations, other than a government unit, that directly or indirectly own 10% or more of any class of the debtor's equity interest:

| Shareholder | Approximate Percentage of Shares Held |
|---|---|
| Blackboard LLC | 100% |

**Fill in this information to identify the case:**

Debtor name Anthology Inc., et al.

United States Bankruptcy Court for the: Southern District of Texas (State)

Case number (If known): ____________

☐ Check if this is an amended filing

# Official Form 204

## Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders

12/15

**A list of creditors holding the 30 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an *insider,* as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 30 largest unsecured claims.**

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim<br>If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | **Amazon Web Services**<br>410 Terry Avenue North<br>Seattle, WA 98109 | Attn: David A. Zapolsky<br>P: 206-266-1323<br>zapolsky@amazon.com | Trade Vendor | | | | **$5,631,903.18** |
| 2 | **Microsoft**<br>One Microsoft Way<br>Redmond, WA 98052-6399 | Attn: Scott Douglass<br>P: 775-823-5600<br>scott.douglass@microsoft.com | Trade Vendor | | | | **$4,970,070.76** |
| 3 | **Class Technologies, Inc.**<br>1717 North Street Northwest<br>Suite 1<br>Washington, DC 20036 | Attn: Michael Chasen<br>P: 202-964-7111<br>hello@class.com | Trade Vendor | | | | **$756,371.65** |
| 4 | **Google**<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | Attn: Justin Meek<br>P: 650-653-0000<br>jcmeek@google.com | Trade Vendor | | | | **$668,314.43** |
| 5 | **Genius Sis, LLC**<br>14359 Miramar Pkwy, Suite 376<br>Miramar, FL 33027 | Attn: Matthew Schnittman<br>P: 954-667-7747<br>info@geniussis.com | Trade Vendor | | | | **$637,402.29** |
| 6 | **Movate, Inc.**<br>5600 Tennyson Parkway, Suite 255<br>Plano, TX 75024 | Attn: Sunil Mittal<br>P: 469-573-5029<br>privacy.officer@movate.com | Trade Vendor | | | | **$472,580.15** |
| 7 | **Reep-Ofc 1111 19Nw DC LLC**<br>1440 New York Ave, Nw Suite 200<br>Washington, DC 20005 | Attn: Michael R. Brancheau<br>P: 312-267-6932<br>mbrancheau@higginsbrancheau.com | Trade Vendor | | | | **$430,377.41** |
| 8 | **Plaza Office Realty II, LLC**<br>1500 Broadway, 24Th Floor<br>New York, NY 10036 | Attn: Douglas K. Hirsch<br>P: 301-230-5225<br>dhirsch@shulmanrogers.com | Trade Vendor | | | | **$370,931.50** |

Debtor Anthology Inc., et al. Case number (if known)
Name

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 9 | **Avalara**<br>906 Alaskan Way, Suite 500<br>Seattle, WA 98104 | Attn: Scott Mcfarlane<br>P: 877-224-3650<br>scott.mcfarlane@gmail.com | Trade Vendor | | | | **$350,920.15** |
| 10 | **Protiviti, Inc.**<br>2884 Sand Hill Rd, Ste 200<br>Menlo Park, CA 94025-7072 | Attn: Joseph Tarantino<br>P: 888-556-7420<br>joseph.tarantino@protiviti.com | Trade Vendor | | | | **$306,941.43** |
| 11 | **Intradiem, Inc.**<br>2500 Dallas Highway, Suite 202<br>Marietta, GA 30064 | Attn: Matt Mcconnell<br>P: 678-356-3500<br>support@intradiem.com | Trade Vendor | | | | **$299,400.00** |
| 12 | **Shepard Exposition Services, Inc**<br>1531 Carroll Drive Northwest<br>Atlanta, GA 30318 | Attn: Kevin Bird, Ceo<br>P: 404-720-8600<br>kevin@shepardes.com | Trade Vendor | | | | **$263,966.82** |
| 13 | **Pendo.io, Inc.**<br>301 Hillsborough Street, Suite 1900<br>Raleigh, NC 27603 | Attn: Todd Olson<br>P: 919-275-5477<br>services@pendo.io | Trade Vendor | | | | **$252,139.32** |
| 14 | **Delinea Secret Server / Guidepoint Security LLC**<br>221 Main Street, Suite 1300<br>San Francisco, CA 94105 | Attn: Art Gilliland<br>P: 669-444-5200<br>art.gilliland@delinea.com | Trade Vendor | | | | **$225,666.72** |
| 15 | **Katten Muchin Rosenman, LLP**<br>525 W Monroe St<br>Chicago, IL 60661 | Attn: Michael I. Verde<br>P: 212-940-8541<br>michael.verde@katten.com | Trade Vendor | | | | **$202,427.82** |
| 16 | **Chekpoint Harmony / Check Point Software Technologies, Inc.**<br>100 Oracle Parkway, Suite 800<br>Redwood City, CA 94065 | Attn: Nadav Zafrir<br>P: 800-429-4391<br>press@checkpoint.com | Trade Vendor | | | | **$202,351.83** |
| 17 | **Executive Hills Mgmt, Inc.**<br>5000 College Blvd Suite 310<br>Overland Park, KS 66211 | Attn: John Cruz<br>P: 913-451-9000<br>john.cruz@lrf-kc.com | Trade Vendor | | | | **$192,912.20** |
| 18 | **Moody's Investors Service**<br>7 World Trade Center 250<br>Greenwich Street<br>New York, NY 10007 | Attn: Rob Fauber<br>P: 212-553-1653<br>clientservices@moodys.com | Trade Vendor | | | | **$147,000.00** |
| 19 | **Sutherland Digital Services, Inc.**<br>175 Sully’S Trail, Suite 301<br>Pittsford, NY 14534 | Attn: Dilip Vellodi<br>P: 585-586-5757<br>dilip.vellodi@sutherlandglobal.com | Trade Vendor | | | | **$145,996.48** |
| 20 | **Alvaria, Inc.**<br>211 Perimeter Center Parkway<br>Suite 200<br>Atlanta, GA 30346 | Attn: Michael Judd<br>P: 978-250-7900<br>info@alvaria.com | Trade Vendor | | | | **$137,328.23** |

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim<br>If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 21 | **MGT Impact Solutions, LLC**<br>4320 West Kennedy Blvd<br>Tampa, FL 33609 | Attn: Claudia Hosang<br>P: 888-302-0899<br>contracts@mgtconsulting.com | Trade Vendor | | | | **$124,794.00** |
| 22 | **S&P GLOBAL RATINGS**<br>55 Water Street<br>New York, NY 10041 | Attn: Steve Kemps, Chief Legal Officer, S&P Global<br>P: 212-438-3303<br>corporate.secretary@spglobal.com | Trade Vendor | | | | **$118,000.00** |
| 23 | **Vercara / Neustar Information Services, Inc.**<br>2201 Cooperative Way, Suite 350<br>Herndon, VA 20171 | Attn: Colin Doherty<br>P: 844-929-0808<br>cdoherty@neustarsecurityservices.com | Trade Vendor | | | | **$115,091.09** |
| 24 | **PG Mainstreet North Forty LLC**<br>2101 West Commercial Blvd<br>Suite 1200<br>Fort Lauderdale, FL 33309 | Attn: Paul Kilgallon<br>P: 770 953-0000<br>paul@mainstreetcapital.com | Trade Vendor | | | | **$114,810.09** |
| 25 | **Revl Productions LLC**<br>409 Willow Ridge Ct,<br>Fort Worth, TX 76103 | Attn: Brett Swords<br>P: 847-800-9154<br>brettswords@revlproductions.com | Trade Vendor | | | | **$114,351.85** |
| 26 | **A-Lign**<br>400 N Ashley Drive, Suite 1325<br>Tampa, FL 33602 | Attn: Scott Price<br>P: 888-702-5446<br>info@a-lign.com | Trade Vendor | | | | **$112,902.22** |
| 27 | **Ernst & Young U.S., LLP**<br>1 More London Place<br>London, SE1 2AF<br>United Kingdom | Attn: Jason A. Jones<br>P: +44 20 7951 2000<br>globalone.support@ey.com | Trade Vendor | | | | **$106,257.98** |
| 28 | **Facebook**<br>1 Hacker Way<br>Menlo Park, CA 94025 | Attn: Jennifer Newstead<br>P: 650-853-1300<br>jnewstead@fb.com | Trade Vendor | | | | **$102,410.50** |
| 29 | **Fontainebleau Las Vegas**<br>2777 S Las Vegas Blvd<br>Las Vegas, NV 89109 | Attn: Maurice Wooden<br>P: 702-678-7777<br>conciergeservices@fblasvegas.com | Trade Vendor | | | | **$100,003.74** |
| 30 | **Quantum Workplace**<br>13810 Fnb Pkwy, Ste 401<br>Omaha, NE 68154 | Attn: Greg Harris<br>P: 402-519-2141<br>greg.harris@quantumworkplace.com | Trade Vendor | | | | **$98,982.00** |

| Fill in this information to identify the case and this filing: | |
|---|---|
| Debtor Name | **Blackboard Tennessee LLC** |
| United States Bankruptcy Court for the: | **Southern District of Texas** (State) |
| Case number (If known): | |

# Official Form 202
# Declaration Under Penalty of Perjury for Non-Individual Debtors 12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

## Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

- ☐ *Schedule A/B: Assets-Real and Personal Property (Official Form 206A/B)*
- ☐ *Schedule D: Creditors Who Have Claims Secured by Property (Official Form 206D)*
- ☐ *Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 206E/F)*
- ☐ *Schedule G: Executory Contracts and Unexpired Leases (Official Form 206G)*
- ☐ *Schedule H: Codebtors (Official Form 206H)*
- ☐ *Summary of Assets and Liabilities for Non-Individuals (Official Form 206Sum)*
- ☐ Amended Schedule
- ☒ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders (Official Form 204)*
- ☒ Other document that requires a declaration **List of Equity Security Holders and Corporate Ownership Statement**

I declare under penalty of perjury that the foregoing is true and correct.

| | | |
|---|---|---|
| Executed on | **09/29/2025** | ☒ ***/s/ Heath C. Gray*** |
| | MM/ DD/YYYY | Signature of individual signing on behalf of debtor |
| | | **Heath C. Gray** |
| | | Printed name |
| | | **Chief Restructuring Officer** |
| | | Position or relationship to debtor |

# OMNIBUS ACTION BY UNANIMOUS WRITTEN CONSENT OF THE BOARD OF DIRECTORS, THE SOLE MEMBER, THE BOARD OF MANAGERS, THE SOLE MANAGER, OR OTHER GOVERNING BODY, AS APPLICABLE, OF THE COMPANIES SET FORTH ON SCHEDULES ATTACHED HERETO

Dated as of September 29, 2025

**WHEREAS**, the undersigned, being (i) all of the members of the boards of directors, (ii) the sole member, (iii) all of the members of the board of managers, and (iv) the sole manager (each, a "Governing Body"), as applicable, of each of the entities listed in **Schedules 1–13** hereof (each, a "Company" and collectively, the "Companies"), as Governing Body of such Company, by unanimous written consent (this "Consent") in lieu of a special meeting and in accordance with the bylaws, articles of incorporation, articles of association, or limited liability company agreements of each Company (collectively, the "Governing Documents"), as applicable, and the applicable laws of the jurisdiction in which such Company is organized, do hereby approve, consent to, and adopt the following recitals and resolutions, with the same force and effect as if they had been adopted at a duly convened special meeting of each Governing Body;

**WHEREAS**, the Governing Body of each Company has reviewed and considered: (i) the filing of voluntary petitions for relief (the "Bankruptcy Petitions") for each Company under the provisions of chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") pursuant to the Governing Documents, as applicable, of each Company and the applicable laws of the jurisdiction in which each Company is organized (the "Chapter 11 Filing"); (ii) the debtor-in-possession financing facility contemplated in connection therewith; (iii) entry into the Restructuring Support Agreement, as defined herein, including all other exhibits, schedules, attachments, and ancillary documents or agreements related thereto; (iv) entry into the Stalking Horse Agreements and approval of the Bid Protections (each as defined herein) (the "Sale Matters"); (v) the appointment of Mr. Heath Gray of FTI Consulting, Inc. ("FTI"), as Chief Restructuring Officer of each Company; and (vi) the retention of professionals by each Company; and

**WHEREAS**, each Governing Body has reviewed and considered the materials presented by the Companies' management and financial and legal advisors, and has had adequate opportunity to consult with such persons regarding the materials presented, obtain additional information, and to fully consider each of the strategic alternatives available to the Companies.

**NOW, THEREFORE, IT IS HEREBY RESOLVED**, that, pursuant to the Governing Documents, each Governing Body has determined, in its business judgment, that the following resolutions are advisable and in the best interest of the Companies, their creditors, stakeholders, and other parties in interest, and hereby adopts the following resolutions:

## 1. CHAPTER 11 FILING

**RESOLVED**, that in the business judgment of each Governing Body, it is desirable and maximizes the value of each Company for the benefit of all stakeholders, for each Company to file

or cause to be filed the Bankruptcy Petitions under the Bankruptcy Code in the Bankruptcy Court, and any other petition for relief or recognition or other order that may be desirable under applicable law in the United States;

**FURTHER RESOLVED**, that in accordance with the Governing Documents, as applicable, of each Company and the applicable laws of the jurisdiction in which each Company is organized, each Governing Body hereby consents to, authorizes, and approves the filing of the Bankruptcy Petitions; and

**FURTHER RESOLVED**, that any duly appointed officer of each of the Companies (the "Authorized Signatories"), with the power of delegation, is hereby authorized, empowered, and directed for and on behalf of each Company to take all actions (including, without limitation, to negotiate and execute any documents, certificates, supplemental agreements, and instruments) to act as signatory and attorney on behalf of each Company in respect of the matters contemplated by the foregoing resolutions, and/or any persons to whom such Authorized Signatories delegate certain responsibilities, be, and hereby is, authorized, empowered, and directed to execute and file on behalf of each Company all petitions, schedules, lists, and other motions, papers, or documents, and to take any and all actions that they deem necessary or proper to obtain such relief, including, without limitation, any action necessary or proper to maintain the ordinary course operations of each Company's business.

**2. DEBTOR-IN-POSSESSION FINANCING, CASH COLLATERAL, AND ADEQUATE PROTECTION OBLIGATIONS**

**WHEREAS**, certain of the Companies are party to that certain First Lien Credit Agreement (as amended, restated, supplemented, or otherwise modified from time to time, the "Superpriority Credit Agreement"), dated as of April 19, 2024, by and among Intermediate HoldCo, as holdings, AcquisitionCo, as administrative borrower, Blackboard, as additional borrower, JPMorgan Chase Bank, N.A., as administrative agent, and the lenders and issuing banks party thereto;

**WHEREAS**, certain of the Companies are party to that certain First Lien Credit Agreement (as amended, restated, supplemented, or otherwise modified from time to time, the "First Lien Credit Agreement"), dated as of October 25, 2021, by and among Intermediate HoldCo, as holdings, AcquisitionCo, as administrative borrower, Blackboard, as additional borrower, JPMorgan Chase Bank, N.A., as administrative agent, and the lenders and issuing banks party thereto;

**WHEREAS**, certain of the Companies are parties to that certain Second Lien Credit Agreement (as amended, restated, supplemented, or otherwise modified from time to time, the "Second Lien Credit Agreement," and, collectively with the Superpriority Credit Agreement and First Lien Credit Agreement, the "Prepetition Credit Agreements"), dated as of October 25, 2021, by and among Intermediate HoldCo, as holdings, AcquisitionCo, as administrative borrower, Blackboard, as additional borrower, Ankura Trust Company, LLC, as administrative agent, and the lenders and issuing banks party thereto;

**WHEREAS**, reference is made to that certain *Senior Secured Debtor-In-Possession Superpriority Term Loan Credit Agreement* (together with all exhibits, schedules, and annexes

thereto, as amended, restated, amended and restated, supplemented, or otherwise modified in writing from time to time, the "DIP Credit Agreement") dated as of, or about, the date hereof, that sets forth the terms and conditions of the debtor-in-possession financing to be provided to the Companies by the lenders listed therein; and

**WHEREAS**, each Governing Body has considered presentations by the Companies' management and advisors regarding the liabilities and liquidity situation of the Companies and their affiliates and subsidiaries, the strategic alternatives available to them, and the effect of the foregoing on the Companies' business and has determined, in the business judgment of each Governing Body and based on the recommendation from the Companies' management and advisors, that the following resolutions maximize value of the Companies for the benefit of all stakeholders.

**NOW, THEREFORE, IT IS HEREBY RESOLVED**, that in the business judgment of each Governing Body, it is desirable, in the best interest of the company and maximizes the value of each Company for the benefit of all of their stakeholders, to obtain the benefits from (i) the incurrence of senior secured superiority debtor-in-possession financing obligations by delivering, entering into, and performing under the DIP Credit Agreement (collectively, the "DIP Financing") and (ii) the use of collateral, including cash collateral, as that term is defined in section 363(a) of the Bankruptcy Code (the "Cash Collateral"), which is security for the secured parties under the Prepetition Credit Agreements (such holders, the "Prepetition Secured Parties");

**FURTHER RESOLVED**, that for each Company to use and benefit from (i) the DIP Financing and (ii) the Cash Collateral, and in accordance with sections 105, 361, 362, 363, 364(c), 364(d), 364(e), 503, and 507 of the Bankruptcy Code, each Company will provide certain liens, claims, and adequate protection to the Prepetition Secured Parties (collectively, the "Adequate Protection Obligations"), as documented in proposed interim and final orders (collectively, the "DIP Orders") to be submitted to the Bankruptcy Court for approval;

**FURTHER RESOLVED**, that the form, terms, and provisions of the DIP Orders and DIP Credit Agreement to which each Company is or will be subject, and the actions and transactions contemplated thereby, and the performance of covenants and obligations by such Company thereunder, be, and hereby are authorized, adopted, and approved, and each of the Authorized Signatories of each Company be, and hereby is, authorized, empowered, and directed, in the name of and on behalf of each Company, to take such actions and negotiate or cause to be prepared and negotiated, and to execute, deliver, perform, and cause the performance of, the DIP Orders, the DIP Credit Agreement, each of the instruments, agreements, and documents listed below, and such other agreements, certificates, instruments, receipts, petitions, motions, or other papers or documents to which each Company is or will be a party (collectively with the DIP Orders, the "DIP Documents"), pledge its property and grant any liens as required by the DIP Documents, incur and pay or cause to be paid all fees and expenses and engage such persons, in each case, in the form or substantially in the form thereof submitted to the Companies, with such changes, additions, and modifications thereto as the officers of each Company executing the same shall approve, such approval to be conclusively evidenced by such officers' execution and delivery thereof:

(a) the Security Agreement (as defined in the DIP Credit Agreement) and the other collateral documents to be entered into on the closing date by the Companies party thereto in favor of the administrative agent;

(b) any Notes (as defined in the DIP Credit Agreement) to be delivered to the lenders (if any);

(c) the Intercompany Note (as defined in the DIP Credit Agreement), dated as of the date hereof, by and among the Payors party thereto and the Payees party thereto;

(d) one or more Committed Loan Notices (as defined in the DIP Credit Agreement);

(e) the Trademark Security Agreement to be entered into on the closing date by the Loan Parties party thereto in favor of the administrative agent (the "Trademark Security Agreement");

(f) the Patent Security Agreement to be entered into on the closing date by the Loan Parties party thereto in favor of the administrative agent (the "Patent Security Agreement");

(g) the Copyright Security Agreement to be entered into on the closing date by the Loan Parties party thereto in favor of the administrative agent (the "Copyright Security Agreement");

(h) any assignment documents, security agreements, pledge agreements, notices, financing statements, tax affidavits, fee letters and other instruments as any of the administrative agent, the required revolving lenders or the required lenders or the other lenders may reasonably request or as may be necessary or appropriate to create, preserve and perfect the liens of the administrative agent purported or required pursuant to any of the DIP Documents to be created in the collateral;

(i) such agreements with third parties (including, without limitation, bank agency agreements, lockbox agreements, control agreements, landlord agreements and warehouse letters) relating to the collateral;

(j) any swap contracts or hedging agreements; and

(k) such other loan documents, guarantees, instruments, certificates (including a solvency certificate) and documents as may be reasonably requested by any of the administrative agent, the required lenders or the other lenders or required by any of the DIP Documents;

**FURTHER RESOLVED**, that each Company, as a debtor and debtor in possession under the Bankruptcy Code be, and hereby is, authorized, empowered, and directed to incur the Adequate Protection Obligations and certain obligations related to the DIP Financing and to undertake any and all related transactions on substantially the same terms as contemplated under the DIP Documents, including entering into fee letters with the applicable DIP Agents and paying the fees

and expenses of the DIP Lenders (collectively, the "DIP Transactions"), and including granting liens on its assets to secure claims that constitute Adequate Protection Obligations;

**FURTHER RESOLVED**, that each of the Authorized Signatories be, and they hereby is, authorized, empowered, and directed, and each of them acting alone hereby is, authorized, empowered, and directed in the name of, and on behalf of, each Company, as debtors and debtors in possession, to take such actions as in their discretion is determined to be necessary, desirable, or appropriate and execute the DIP Transactions, including delivery of: (i) the DIP Documents; (ii) such other instruments, certificates, notices, assignments, agent fee letters, and documents as may be reasonably requested by the agents; and (iii) such forms of deposit, account control agreements, officer's certificates, compliance certificates, and any other documents as may be required by the DIP Documents;

**FURTHER RESOLVED**, that the Authorized Signatories be, and each of them individually and acting singly hereby is, authorized, in the name and on behalf of each Company, to assign, transfer, pledge and grant to the administrative agent, for the ratable benefit of the respective or applicable Prepetition Secured Parties, a security interest in all or substantially all the assets of such Company, as collateral security for the prompt and complete payment and performance when due of the Obligations (as defined in the DIP Credit Agreement) under the DIP Documents to which such Company is a party and to take or cause to be taken any such actions as may be necessary, appropriate or desirable to cause such Company to create, perfect and maintain a security interest in such Company's property or assets constituting Collateral (as defined in the DIP Credit Agreement) as described or contemplated in the DIP Documents;

**FURTHER RESOLVED,** that each of the Authorized Signatories be, and hereby is, authorized, empowered, and directed in the name of, and on behalf of, each Company to file or to authorize the agents to file any Uniform Commercial Code (the "UCC") financing statements, any other equivalent filings, any intellectual property filings and recordation and any necessary assignments for security or other documents in the name each Company that the agents deem necessary or appropriate to perfect any lien or security interest granted under the DIP Orders, including any such UCC financing statement containing a generic description of collateral, such as "all assets," "all property now or hereafter acquired" and other similar descriptions of like import, and to execute and deliver, and to record or authorize the recording of, such mortgages and deeds of trust in respect of real property of each Company and such other filings in respect of intellectual and other property of each Company, in each case as the agents may reasonably request to perfect or to evidence the security interests of the agents under the DIP Orders or any of the other DIP Documents; and

**FURTHER RESOLVED**, that each of the Authorized Signatories be, and hereby is, authorized, empowered, and directed in the name of, and on behalf of, each Company to take all such further actions, including, without limitation, to pay or approve the payment of all fees and expenses payable in connection with the DIP Transactions and all fees and expenses incurred by or on behalf of each Company in connection with the foregoing resolutions, in accordance with the terms of the DIP Documents, which shall in their sole judgment be necessary, desirable, proper, or advisable to perform any of each Company's obligations under or in connection with the DIP Orders or any of the other DIP Documents and the transactions contemplated therein and to carry out fully the intent of the foregoing resolutions.

## 3. RESTRUCTURING SUPPORT AGREEMENT

**RESOLVED**, that in the business judgment of each Governing Body, it is desirable and in the best interest of the Companies, their creditors, stakeholders, and other parties in interest, that the Companies finalize, execute, and deliver that certain restructuring support agreement (as may be amended, modified, or supplemented from time to time, the "Restructuring Support Agreement"), subject to any necessary modifications and final negotiations consistent with these resolutions and, in accordance with the requirements in the Governing Documents and the applicable laws of the jurisdiction in which the Companies are organized, hereby consent to, authorize, and approve, entry into the Restructuring Support Agreement;

**FURTHER RESOLVED**, that in the business judgment of each Governing Body, the form, terms, and provisions of the Restructuring Support Agreement, the transactions contemplated thereby, including any auction, sales process, merger, business combination, reorganization, recapitalization, asset sale, equity sale, or other fundamental transaction contemplated thereby, and all other documents, agreements, instruments, and/or certificates that have been, or will be, executed, delivered, and/or filed under or in connection with the Restructuring Support Agreement, including, but without limitation, the Definitive Documents (as defined therein), be, and hereby are, in all respects, authorized and approved; and

**FURTHER RESOLVED**, that in the business judgment of each Governing Body, it is desirable and in the best interest of the Companies, their creditors, stakeholders, and other parties in interest to finalize, execute, and deliver the Restructuring Support Agreement and all other exhibits, schedules, attachments, and ancillary documents or agreements, subject to necessary modifications and final negotiations, and the Companies' performance of their obligations thereunder.

## 4. THE STALKING HORSE AGREEMENTS AND BID PROTECTIONS

**RESOLVED**, that the Companies have negotiated an asset purchase agreement, with Ellucian Company LLC ("Ellucian"), in good faith for the sale of those certain assets as set forth in the Ellucian Stalking Horse Agreement to Ellucian (the "Ellucian Stalking Horse Agreement"), and that each Governing Body of each Company, in its business judgment, believes that finalization of, and entry into, the Ellucian Stalking Horse Agreement is in the best interests of each Company, their creditors, stakeholders, and other parties in interest, and such entry be, and hereby is, ratified and approved in all respects, including modifications as necessary, and each Company is hereby authorized to undertake any and all related transactions contemplated thereby, including finalizing the negotiation and documentation thereof, on the terms contained therein or on such other terms and conditions as the Authorized Signatories, or any of them in their, his, or her sole discretion, determine to be necessary, appropriate, or desirable;

**FURTHER RESOLVED**, that the Companies have negotiated an asset purchase agreement, with Encoura, LLC ("Encoura," and together with Ellucian, the "Stalking Horse Bidders"), in good faith for the sale of those certain assets as set forth in the Encoura Stalking Horse Agreement to Encoura (the "Encoura Stalking Horse Agreement," and together with the Ellucian Stalking Horse Agreement, the "Stalking Horse Agreements"), and that each Governing Body of each Company, in its business judgment, believes that finalization of, and entry into, the Encoura Stalking Horse

Agreement is in the best interests of each Company, their creditors, stakeholders, and other parties in interest, and such entry be, and hereby is, ratified and approved in all respects, including modifications as necessary, and each Company is hereby authorized to undertake any and all related transactions contemplated thereby, including finalizing the negotiation and documentation thereof, on the terms contained therein or on such other terms and conditions as the Authorized Signatories, or any of them in their, his, or her sole discretion, determine to be necessary, appropriate, or desirable;

**FURTHER RESOLVED**, that the Authorized Signatories of each Company be, and hereby are, authorized, empowered, and directed to execute and file with the Bankruptcy Court a motion to approve the Stalking Horse Agreements, including (i) the expense reimbursement and breakup fee up to 5% of the purchase price under the Ellucian Stalking Horse Agreement and (ii) the expense reimbursement and breakup fee up to 6% of the purchase price under the Encoura Stalking Horse Agreement (collectively, the "Bid Protections"), and authorize each Company to conduct a sale process for all, substantially all, or a portion of the Companies' assets pursuant to certain bidding procedures (the "Bidding Procedures"); and

**FURTHER RESOLVED**, that the Authorized Signatories of each Company be, and hereby are, authorized, empowered, and directed to conduct one or more auctions, if necessary, in accordance with the terms of the Bidding Procedures (each, an "Auction") and to negotiate, for and on behalf of each Company, such agreements, documents, assignments, and instruments as may be necessary, appropriate, or desirable in connection with the sale to the Stalking Horse Bidders or such other successful bidder at an Auction.

## 5. CHIEF RESTRUCTURING OFFICER

**RESOLVED**, that to assist with the Companies' evaluation, pursuit, and implementation of strategic alternatives, each Governing Body has considered the appointment of a representative from FTI to serve in the capacity of Chief Restructuring Officer of each Company, which such duties, authority, and responsibilities as set forth herein and that certain form of engagement letter by and between Astra Acquisition Corp. and FTI (the "Engagement Letter") attached hereto as **Exhibit A**;

**FURTHER RESOLVED**, that each Governing Body forms the office of the Chief Restructuring Officer at each Company, which shall have the duties, authority, and responsibilities set forth herein in the Engagement Letter and shall be an Authorized Signatory on behalf of each Company;

**FURTHER RESOLVED**, that pursuant to the applicable organizational documents of each Company, Mr. Heath Gray of FTI is hereby appointed as the Chief Restructuring Officer of each Company effective as of the date hereof, reporting to, and serving at the direction of, the Governing Bodies, until his successor has been duly appointed or until his earlier resignation, removal from office, or death; and

**FURTHER RESOLVED**, that the Engagement Letter and the terms thereof is hereby approved in the form presented to each Governing Body and each Authorized Signatory is hereby

authorized to enter into such Engagement Letter (with such changes as authorized by such Authorized Signatory as evidenced by its signature thereto) and take all actions thereunder.

**6. RETENTION OF PROFESSIONALS**

**RESOLVED**, that each of the Authorized Signatories be, and hereby is, authorized, empowered, and directed to employ on behalf of each Company: (i) Kirkland & Ellis LLP and Kirkland & Ellis International LLP as bankruptcy counsel; (ii) Haynes & Boone, LLP as local bankruptcy and conflict matters counsel; (iii) PJT Partners LP as investment banker; (iv) FTI Consulting, Inc. as restructuring advisor; (v) Stretto Inc. as claims and noticing agent; and (vi) any other legal counsel, accountants, financial advisors, restructuring advisors, or other professionals each of the Authorized Signatories deem necessary, appropriate, or advisable; each to represent and assist the Companies in carrying out their duties and responsibilities and exercising its rights under the Bankruptcy Code and any applicable law (including, but not limited to, the law firms filing any motions, objections, replies, applications, pleadings, or responses); and

**FURTHER RESOLVED**, that each of the Authorized Signatories be, and they hereby is, authorized, directed, and empowered to employ any other professionals to assist each Company in carrying out its duties under the Bankruptcy Code; and in connection therewith, each of the Authorized Signatories, with power of delegation, is hereby authorized, empowered, and directed to execute appropriate retention agreements, to pay appropriate retainers and fees, and to cause to be filed appropriate applications, schedules, motions, lists, applications, pleadings, and other papers, and to perform such further actions and execute such further documentation for authority to retain the services of any other professionals as necessary, proper, or advisable in accordance with the foregoing resolutions.

**7. GENERAL**

**RESOLVED**, that in addition to the specific authorizations heretofore conferred upon the Authorized Signatories, each of the Authorized Signatories (and their designees and delegates), either individually or as otherwise required by the Governing Documents, as applicable, of each Company and the applicable laws of the jurisdiction in which each Company is organized, be, and each of them hereby is, authorized, empowered, and directed to execute, acknowledge, deliver, and file any and all agreements, certificates, instruments, powers of attorney, letters, forms, transfer, deeds, and other documents on behalf of each Company relating to the foregoing resolutions;

**FURTHER RESOLVED**, that each of the Authorized Signatories be, and hereby is, authorized, empowered, and directed to execute and file all petitions, schedules, motions, lists, applications, pleadings, and other papers and to perform such further actions and execute such further documentation that each of the Authorized Signatories in their absolute discretion deem necessary, proper, appropriate, or desirable in connection with chapter 11 cases of each Company and in accordance with the foregoing resolutions;

**FURTHER RESOLVED**, that each of the Authorized Signatories (and their designees and delegates) be, and hereby is, authorized, empowered, and directed, in the name of and on behalf of each Company to take or cause to be taken any such other and further action, and to

execute, acknowledge, deliver, and file any and all such agreements, certificates, instruments, and other documents and to pay all expenses, retainers, and fees, including but not limited to filing fees, in each case as in such Authorized Signatory's absolute discretion, shall be necessary, appropriate, or desirable in order to fully carry out the intent and accomplish the purposes of the resolutions adopted herein;

**FURTHER RESOLVED**, that each Governing Body has received sufficient notice of the actions and transactions relating to the matters contemplated by the foregoing resolutions, as may be required by the Governing Documents, as applicable, of each Company, or hereby waives any right to have received such notice;

**FURTHER RESOLVED**, that all acts, actions, and transactions relating to the matters contemplated by the foregoing resolutions done in the name of and on behalf of each Company, which acts would have been approved by the foregoing resolutions except that such acts were taken before the adoption of these resolutions, are hereby in all respects approved, confirmed and ratified as the true acts and deeds of each Company with the same force and effect as if each such act, transaction, agreement, or certificate had been specifically authorized in advance by resolution of each Company; and

**FURTHER RESOLVED**, that each of the Authorized Signatories (and their designees and delegates) be, and each of them hereby is, authorized, empowered, and directed to do all such other acts, deeds and other things as each Company itself may lawfully do, in accordance with the Governing Documents, as applicable, of each Company and the applicable laws of the jurisdiction in which each Company is organized, howsoever arising in connection with the matters above, or in furtherance of the intentions expressed in the foregoing resolutions, including, but not limited to, the negotiation, finalization, execution, and delivery of any other agreements, certificates, instruments, powers of attorney, letters, forms, transfer, deeds, and other documents whatsoever as the individual acting may in his/her absolute and unfettered discretion approve, deem, or determine necessary, appropriate, or advisable, such approval, deeming, or determination to be conclusively evidenced by said individual taking such action or the execution thereof.

*****

**IN WITNESS WHEREOF**, the undersigned, constituting the board of directors of the entity listed on Schedule 1, do hereby consent to the foregoing actions and resolutions effective as of the date first written above. This unanimous written consent may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument. This unanimous written consent may be executed by facsimile, email transmission, or other electronic means, and such facsimile, email transmission, or other electronic means shall be valid and binding to the same extent as if it were an original.

Bruce Dahlgren

______________________________
Bruce Dahlgren

______________________________
Garrick Bernstein

Michael Pohorylo

______________________________
Michael Pohorylo

**IN WITNESS WHEREOF**, the undersigned, constituting the board of directors of the entities listed on Schedule 2, do hereby consent to the foregoing actions and resolutions effective as of the date first written above. This unanimous written consent may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument. This unanimous written consent may be executed by facsimile, email transmission, or other electronic means, and such facsimile, email transmission, or other electronic means shall be valid and binding to the same extent as if it were an original.

Bruce Dahlgren

Bruce Dahlgren

Garrick Bernstein

**IN WITNESS WHEREOF**, the undersigned, constituting the board of managers of the entities listed on Schedule 3, do hereby consent to the foregoing actions and resolutions effective as of the date first written above. This unanimous written consent may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument. This unanimous written consent may be executed by facsimile, email transmission, or other electronic means, and such facsimile, email transmission, or other electronic means shall be valid and binding to the same extent as if it were an original.

Bruce Dahlgren

______________________________

Bruce Dahlgren

______________________________

Garrick Bernstein

**IN WITNESS WHEREOF**, the undersigned, constituting the sole manager of the entity listed on Schedule 4, do hereby consent to the foregoing actions and resolutions effective as of the date first written above. This unanimous written consent may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument. This unanimous written consent may be executed by facsimile, email transmission, or other electronic means, and such facsimile, email transmission, or other electronic means shall be valid and binding to the same extent as if it were an original.

Bruce Dahlgren

Bruce Dahlgren
Its: Authorized Signatory

**IN WITNESS WHEREOF**, the undersigned, constituting the sole manager of the entity listed on Schedule 5, do hereby consent to the foregoing actions and resolutions effective as of the date first written above. This unanimous written consent may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument. This unanimous written consent may be executed by facsimile, email transmission, or other electronic means, and such facsimile, email transmission, or other electronic means shall be valid and binding to the same extent as if it were an original.

Bruce Dahlgren

Bruce Dahlgren
Its: Authorized Signatory

**IN WITNESS WHEREOF**, the undersigned, constituting the sole manager of the entities listed on Schedule 6, do hereby consent to the foregoing actions and resolutions effective as of the date first written above. This unanimous written consent may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument. This unanimous written consent may be executed by facsimile, email transmission, or other electronic means, and such facsimile, email transmission, or other electronic means shall be valid and binding to the same extent as if it were an original.

Bruce Dahlgren

Bruce Dahlgren
Its: Authorized Signatory

**IN WITNESS WHEREOF**, the undersigned, constituting the sole member of the entity listed on Schedule 7, do hereby consent to the foregoing actions and resolutions effective as of the date first written above. This unanimous written consent may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument. This unanimous written consent may be executed by facsimile, email transmission, or other electronic means, and such facsimile, email transmission, or other electronic means shall be valid and binding to the same extent as if it were an original.

Bruce Dahlgren

Bruce Dahlgren
Its: Authorized Signatory

**IN WITNESS WHEREOF**, the undersigned, constituting the sole member of the entity listed on Schedule 8, do hereby consent to the foregoing actions and resolutions effective as of the date first written above. This unanimous written consent may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument. This unanimous written consent may be executed by facsimile, email transmission, or other electronic means, and such facsimile, email transmission, or other electronic means shall be valid and binding to the same extent as if it were an original.

Bruce Dahlgren

Bruce Dahlgren
Its: Authorized Signatory

**IN WITNESS WHEREOF**, the undersigned, constituting the sole member of the entity listed on Schedule 9, do hereby consent to the foregoing actions and resolutions effective as of the date first written above. This unanimous written consent may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument. This unanimous written consent may be executed by facsimile, email transmission, or other electronic means, and such facsimile, email transmission, or other electronic means shall be valid and binding to the same extent as if it were an original.

Bruce Dahlgren

Bruce Dahlgren
Its: Authorized Signatory

**IN WITNESS WHEREOF**, the undersigned, constituting the sole member of the entity listed on Schedule 10, do hereby consent to the foregoing actions and resolutions effective as of the date first written above. This unanimous written consent may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument. This unanimous written consent may be executed by facsimile, email transmission, or other electronic means, and such facsimile, email transmission, or other electronic means shall be valid and binding to the same extent as if it were an original.

Bruce Dahlgren

Bruce Dahlgren
Its: Authorized Signatory

**IN WITNESS WHEREOF**, the undersigned, constituting the sole shareholder of the entity listed on Schedule 11, do hereby consent to the foregoing actions and resolutions effective as of the date first written above. This unanimous written consent may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument. This unanimous written consent may be executed by facsimile, email transmission, or other electronic means, and such facsimile, email transmission, or other electronic means shall be valid and binding to the same extent as if it were an original.

Bruce Dahlgren

Bruce Dahlgren
Its: Authorized Signatory

**IN WITNESS WHEREOF**, the undersigned, constituting the sole shareholder of the entity listed on Schedule 12, do hereby consent to the foregoing actions and resolutions effective as of the date first written above. This unanimous written consent may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument. This unanimous written consent may be executed by facsimile, email transmission, or other electronic means, and such facsimile, email transmission, or other electronic means shall be valid and binding to the same extent as if it were an original.

Bruce Dahlgren

________________________________

Bruce Dahlgren
Its: Authorized Signatory

**IN WITNESS WHEREOF**, the undersigned, constituting the sole member of the entity listed on Schedule 13, do hereby consent to the foregoing actions and resolutions effective as of the date first written above. This unanimous written consent may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument. This unanimous written consent may be executed by facsimile, email transmission, or other electronic means, and such facsimile, email transmission, or other electronic means shall be valid and binding to the same extent as if it were an original.

Bruce Dahlgren

Bruce Dahlgren
Its: Authorized Signatory

**Schedule 1**
**Board of Directors: Bruce Dahlgren, Garrick Bernstein, and Michael Pohorylo**

| Entities | Jurisdiction |
|---|---|
| Anthology Inc. | Florida |

**Schedule 2**
**Board of Directors: Bruce Dahlgren and Garrick Bernstein**

| Entities | Jurisdiction |
|---|---|
| Anthology Inc. of NY | Delaware |
| ApplyYourself, Inc. | Delaware |
| Bb Acquisition Corp. | Delaware |
| Blackboard Campuswide of Texas, Inc. | Texas |
| Blackboard Collaborate Inc. | Delaware |
| Blackboard Student Services Inc. | Delaware |
| Campus Management Acquisition Corp. | Delaware |
| Edcentric, Inc. | Delaware |
| Edcentric Midco, Inc. | Delaware |
| MyEdu Corporation | Delaware |
| OrgSync, Inc. | Texas |

**Schedule 3**
**Board of Managers: Bruce Dahlgren and Garrick Bernstein**

| Entities | Jurisdiction |
|---|---|
| Edcentric Holdings, LLC | Delaware |
| Academic Management Systems, LLC | Delaware |

**Schedule 4**
**Sole Manager: Anthology Inc.**

| Subsidiary | Jurisdiction |
|---|---|
| Admissions US, LLC | Delaware |

**Schedule 5**
**Sole Manager: Blackboard Student Services Inc.**

| Subsidiary | Jurisdiction |
|---|---|
| Perceptis, LLC | Ohio |

**Schedule 6**
**Sole Manager: Blackboard LLC**

| Subsidiary | Jurisdiction |
|---|---|
| Blackboard Tennessee LLC | Delaware |
| Higher One Real Estate SP, LLC | Delaware |

**Schedule 7**
**Sole Member: Astra Acquisition Corp.**

| Subsidiary | Jurisdiction |
|---|---|
| Blackboard Super Holdco, LLC | Delaware |

**Schedule 8**

**Sole Member: Blackboard Holdings, LLC**

| Subsidiary | Jurisdiction |
|---|---|
| Blackboard LLC | Delaware |

**Schedule 9**
**Sole Member: Blackboard LLC**

| Subsidiary | Jurisdiction |
|---|---|
| Bb Management LLC | Delaware |

**Schedule 10**
**Sole Member: Blackboard Super Holdco, LLC**

| Subsidiary | Jurisdiction |
|---|---|
| Blackboard Holdings, LLC | Delaware |

**Schedule 11**
**Sole Shareholder: Edcentric, Inc.**

| Subsidiary | Jurisdiction |
|---|---|
| Anthology Inc. of Missouri | Delaware |

**Schedule 12**
**Sole Shareholder: ApplyYourself, Inc.**

| Subsidiary | Jurisdiction |
|---|---|
| AY Software Services, Inc. | Delaware |

**Schedule 13**
**Sole Member: Blackboard International L.P.**

| Subsidiary | Jurisdiction |
|---|---|
| Blackboard International LLC | Delaware |

**Exhibit A**